IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PATRICIA TYUS, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| HOUSING AUTHORITY OF FULTON COUNTY | |
| Defendant. | |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Patricia Tyus ("Plaintiff" or "Ms. Tyus"), by and through their undersigned counsel, and files this, their Complaint for Damages, and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Ms. Tyus brings this action for damages and reasonable attorney fees against Defendant Housing Authority of Fulton County ("Defendant") for violations of her rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

## JURISDICTION AND VENUE

### 2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

### 3.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, venue is appropriate in this Court.

## ADMINISTRATIVE PROCEDURES

### 4.

Ms. Tyus has fulfilled all conditions necessary to proceed with her claims under Title VII.

### 5.

Ms. Tyus filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 21, 2022.

### 6.

The EEOC issued its Notice of Right to Sue on January 25, 2023.

## PARTIES

### 7.

Ms. Tyus is a Female citizen of the Unites States of America and is subject to the jurisdiction of this Court.

### 8.

Defendant is a municipal government body that is located and performs services within this District.

### 9.

At all times relevant, Defendant has employed fifteen (15) or more employees for the requisite duration under Title VII.

### 10.

Defendant is therefore covered under Title VII in accordance with 42 U.S.C. § 2000e(b).

### 11.

Defendant may be served with process through its Board Chair, Antavius M. Weems, at Defendants offices at 4273 Wendell Dr SW, Atlanta, GA 30336.

## FACTUAL ALLEGATIONS

### 12.

Ms. Tyus began working for Defendant on March 2, 2020.

13.

Ms. Tyus was employed as Defendant's Executive Director.

14.

During her time with Defendant, Ms. Tyus was never written up.

15.

During her time with Defendant, Ms. Tyus was never disciplined.

16.

During her time with Defendant, Ms. Tyus never received a negative performance appraisal.

17.

Ms. Tyus was subjected to a hostile working environment based on her sex during her employment with Defendant.

18.

In October 2020, a Commissioner, Tacoma Brown, told Ms. Tyus that if he were younger, he would like to be in a romantic relationship with Ms. Tyus.

19.

Also in October 2022, Ms. Tyus made a report to the Chairman of Defendant's Board, Antavius Weems, about Mr. Brown's behavior.

20.

Defendant admitted that Ms. Tyus reported this comment in its Position Statement response to Ms. Tyus's EEOC Charge.

21.

Defendant admitted that Brown made this comment to Ms. Tyus in its Position Statement response to Ms. Tyus's EEOC Charge.

22.

James Harper, a Resident Commissioner would also comment that he needed to get out of Section Eight housing because he "had other plans" for himself and Ms. Tyus.

23.

Because Harper continued consistently making that comment when he talked to Ms. Tyus, Ms. Tyus became uncomfortable and stopped communicating with him by herself.

24.

For example, Ms. Tyus had Breonna Smith, another employee, stay with her until Harper left Defendant's offices one day because he was standing around outside after his work was done and it made Ms. Tyus uncomfortable.

25.

Harper waited for at least an hour after he had no reason to be at the offices.

26.

Another employee, Uniqua Simms, had complained that Harper was flirting with her and was trying to have a relationship with her.

27.

Ms. Tyus was asked to look into the complaint by Weems.

28.

At some point, Harper scheduled a meeting with Simms where he told her that she should have come to him instead of making a complaint.

29.

On January 31, 2022, James Harper, another Commissioner, came in and told Ms. Tyus that he liked her hair.

30.

Harper then approached Ms. Tyus and said: You are hard, you are hard, you are hard with yo' pretty self."

31.

Harper looked to and from Ms. Tyus's breasts and face while making this comment.

32.

When Harper approached Ms. Tyus and made the comment, he grabbed her wrist.

33.

Ms. Tyus reported Harper's behavior to Weems.

34.

Weems told Ms. Tyus to put her complaint in writing.

35.

Ms. Tyus did so and carbon copied the Board's attorney, P. Andrew Patterson.

36.

Patterson investigated Ms. Tyus's complaint against Harper.

37.

Defendant admitted in its Position Statement response to Ms. Tyus's EEOC Charge that Ms. Tyus reported the behavior detailed in Paragraphs 29 to 32.

38.

Defendant stated in its Position Statement response to Ms. Tyus's EEOC Charge that "[T]he statement 'I like your hair' and staring at [Ms. Tyus's] face and beasts were insufficient to conclude that she had been sexually harassed by Harper."

39.

Defendant did not believe that staring at a female's employees face and breasts was sexual harassment.

40.

Defendant did not believe that staring at a female's employees face and breasts while making a sexual comment was sexual harassment.

41.

Because of the letter Ms. Tyus wrote, Defendant was aware that the singular comment that Harper made about Plaintiff's hair was not the only thing he said or did that day.

42.

Ms. Tyus also experienced other sex-based harassment while working for Defendant.

43.

Most of this harassment came from Weems.

44.

Weems would demean and belittle Ms. Tyus during meetings with her.

45.

This included the monthly board meetings.

46.

Whenever Ms. Tyus would speak, she would be belittled.

47.

Weems mostly would not even allow Ms. Tyus to speak.

48.

Weems would ask Ms. Tyus if she thought she was smarter than him.

49.

Weems would use hostile and demeaning tones with Ms. Tyus constantly for no reason.

50.

Ms. Tyus dreaded attending the board meetings.

51.

The hostile work environment and harassment brought Ms. Tyus to the point where she almost resigned.

52.

James Harper, before he made the sexually harassing comment to Ms. Tyus, convinced her to not resign.

53.

Ms. Tyus told Weems that she was going to resign during a meeting where he was antagonizing and yelling at her.

54.

Ms. Tyus got up and left and Weems followed her and continued to harass her, now in front of other employees.

55.

Weems would only act in the ways describe above to female employees.

56.

For example, Weems behaved this way towards the Vice-Chair, Barbara Duffy.

57.

Barbara Duffy is female.

58.

Weems did not act the way he acted towards women to men.

59.

Another unknown employee made an email that was similar to Ms. Tyus's name but included gender-based derogatory language alleging that Ms. Tyus was harassing the staff.

60.

Ms. Tyus complained about the email and reported that this created a hostile work environment and was harassment to the entire Board.

61.

The Board never addressed any of Ms. Tyus's concerns related to the email.

62.

Defendant never investigated that email.

63.

As a result, on February 12, 2022, Ms. Tyus filed an intake questionnaire with the EEOC to begin the process of making a charge of discrimination.

64.

The following Friday, February 18, 2022, Ms. Tyus attended a telephonic meeting with Patterson, Weems, and another employee, Barbara Duffy.

65.

During that meeting, Ms. Tyus informed everyone that she had contacted the EEOC to report discrimination and harassment.

66.

Patterson then asked her "did you say that you filed an EEOC Charge?"

67.

Ms. Tyus responded that she had contacted the EEOC.

68.

Patterson then said that if Ms. Tyus had contacted the EEOC, there was no need for the conversation to continue and ended the call.

69.

Defendant admitted in its Position Statement response to Ms. Tyus's EEOC Charge that it stopped discussing her allegations of harassment with her "because she had filed a complaint with the EEOC."

70.

Around ten days later, Weems, Harper, Patterson, another employee named Debbie Allen, and Defendant's Commissioner met with Ms. Tyus at Defendant's offices.

71.

During that meeting, on or about March 1, 2022, the other attendants told Ms. Tyus that they had met the night before and decided to terminate her employment.

72.

During the meeting, Weems referenced the circumstances surrounding Ms. Tyus's "EEOC Charge" and notifying Defendant of her "EEOC Charge" as a reason for her termination.

73.

Defendant admitted in its Position Statement Response to the EEOC that when Defendant discovered Ms. Tyus had "filed a complaint with the EEOC," the matter had become "adversarial."

74.

During the meeting, Weems also referenced financial irregularities as another reason for Ms. Tyus's termination.

75.

Weems was referencing an overpayment paid to Ms. Tyus by Defendant.

76.

Ms. Tyus noticed this problem when she was given the budget by Michelle Johnson, another employee.

77.

Specifically, Ms. Tyus noticed her listed salary was higher than it actually was.

78.

Ms. Tyus notified Johnson.

79.

When Ms. Tyus investigated, she found Breonna Smith, another employee who was involved with benefits, had doubled her car allowance when she sent Ms. Tyus's payment details to Defendant's payroll company.

80.

Ms. Tyus called Weems and informed them of the situation.

81.

Weems responded that Ms. Tyus "better not have increased her salary."

82.

Ms. Tyus responded that she had not increased her salary.

83.

Upon information and belief, Ms. Tyus sent Smith's email evidencing her original mistake to Weems.

84.

Ms. Tyus also kept Weems appraised of her efforts to correct the error.

85.

Later, Weems told Ms. Tyus that the Board discussed the issue.

86.

The error was corrected by Defendant's payroll employees.

87.

Soon after this incident, Ms. Tyus asked Weems for an accounting of the amounts that she was supposed to be paid and the amounts she had been paid.

88.

This occurred during a meeting between Weems and Ms. Tyus where Ms. Tyus had brought up the fact she was supposed to have a review to determine if she was eligible for a raise.

89.

Weems said he did not want to discuss the overpayment issues as that and her raise "were two separate issues."

90.

Ms. Tyus did not hear about her personal overpayment issues again until her termination.

91.

Ms. Tyus was never given an accounting of how much she had been overpaid.

92.

Ms. Tyus later noticed that another employee had the same issue with her payments being higher than they were supposed to.

93.

The employee at issue was Tremichelle Johnson.

94.

The issue with Johnson was that her insurance was not being taken out of her paycheck.

95.

Because Ms. Tyus now suspected that there were additional employees who were being overpaid, she contacted a third-party auditor to audit the payroll and verify what amounts needed to be paid back.

96.

However, Weems contacted Patterson and told him to stop the audit.

97.

Patterson did stop the audit from occurring.

98.

After Ms. Tyus was terminated, Defendant and its employees made false statements about Ms. Tyus.

99.

These statements impaired Ms. Tyus's ability to find employment.

100.

Defendant and its employees stated that she had engaged in a physical fight when she was terminated.

101.

Defendant and its employees stated that she was arrested when she was terminated.

102.

Both statements were false.

103.

Breonna Smith made those statements.

104.

Defendant also spread a rumor that Ms. Tyus was terminated for stealing money.

105.

ZsaZsa Heard, the Executive Director of the Lagrange Housing Authority, told Jillian Baldwin that it "was a shame" Ms. Tyus had been terminated for stealing money.

106.

Baldwin told Ms. Tyus about what Heard had said.

107.

Ms. Tyus immediately called Shareka Howard, an employee who works at the Jonesboro Housing Authority, and asked her if she had heard that Ms. Tyus had stolen money from Defendant.

108.

Howard told Ms. Tyus that she (Howard) had heard that rumor.

## COUNT I: HOSTILE WORK ENVIRONMENT BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

109.

Ms. Tyus re-alleges paragraphs 12 to 108 as if set forth fully herein.

110.

Ms. Tyus is a woman, a member of a protected class.

111.

Ms. Tyus was subjected to severe or pervasive unwelcomed sexual harassment because of her sex.

112.

The harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and created a discriminatorily abusive working environment.

113.

Defendant is liable for the harassment Ms. Tyus faced from Harper.

114.

Defendant is liable for the harassment Ms. Tyus faced from Brown.

115.

Defendant is liable for the harassment Ms. Tyus faced from Weems.

116.

Defendant willfully and wantonly disregarded Ms. Tyus's rights and Defendant's actions were undertaken in bad faith.

117.

As a direct and proximate result of Defendant's violation of Title VII, Ms. Tyus has been made the victim of acts that have adversely affected her psychological and physical well-being.

118.

Accordingly, Defendant is liable for the damages Ms. Tyus has sustained as a result of the harassment outlined in this Complaint.

119.

Defendant acted with malice and with reckless disregard for Ms. Tyus's federally protected rights.

120.

As a result of Defendant's actions, Ms. Tyus is entitled to the relief requested below.

## COUNT II:  RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

121.

Ms. Tyus re-alleges paragraphs 12 to 108 as if set forth fully herein.

122.

Ms. Tyus engaged in protected activity when she reported being sexually harassed.

123.

Ms. Tyus engaged in protected activity when she made an EEOC inquiry.

124.

Defendant terminated Ms. Tyus due to her protected activity.

125.

Defendant terminated Ms. Tyus within a close temporal proximity of her informing it that she had made an EEOC inquiry.

126.

The Defendant's actions, as detailed above, in terminating Ms. Tyus because of her protected activity constitutes unlawful intentional retaliation in violation of Title VII.

127.

Defendant specifically referenced Ms. Tyus's EEOC Charge when terminating her.

128.

In their Responde to Ms. Tyus's EEOC Charge, Defendant admitted that Ms. Tyus's supervisors were told not to continue their conversation with Ms. Tyus about her reports of sexual harassment because she had filed a complaint with the EEOC.

129.

Defendnat stopped investigating Ms. Tyus's complaint of sexual harassment when it learned that she had filed an EEOC Charge.

130.

The Defendant willfully and wantonly disregarded Ms. Tyus's rights, and the Defendant's retaliation against Ms. Tyus was untertaken in bad faith.

131.

Accordingly, Defendant is liable for the damages Ms. Tyus has sustained as a result of the Corporate Defendants' unlawful retaliation.

## §**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

(a) General damages for mental and emotional suffering caused by Defendants' misconduct;

(b) Punitive damages based on Defendants' willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c) Reasonable attorney's fees and expenses of litigation;

(d) Trial by jury as to all issues;

(e) Prejudgment interest at the rate allowed by law;

(f) Declaratory relief to the effect that the Corporate Defendants violated Plaintiff's statutory rights;

(g) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendants from further unlawful conduct of the type described herein;

(h) Damages for lost wages and benefits and prejudgment interest thereon; and

(i) All other relief to which she  may be entitled.

**BARRETT & FARAHANY**

s/ *Micah Barry*
Micah Barry
Georgia Bar No. 103184

Counsel for Plaintiff

P.O. Box 530092
Atlanta, Georgia 30353
(404) 214-0120
micah@justiceatwork.com

## **JURY DEMAND**

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

This 30th day of March, 2023.

Respectfully submitted,

**BARRETT & FARAHANY**

*s/ Micah Barry*

Micah Barry

Georgia Bar No. 103184

## <u>FONT AND POINT CERTIFICATION</u>

The undersigned counsel for Plaintiff certifies that the within and foregoing

**COMPLAINT** was prepared using Times New Roman, 14-point font in

accordance with LR 5.1(B).

This 30th day of March, 2023.

Respectfully submitted,

**BARRETT & FARAHANY**

*s/ Micah Barry*

Micah Barry

Georgia Bar No. 103184